1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL LEWIS BOONE, | Case No.  1:20-cv-01281-KES-BAM (PC) |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUR-REPLY<br>(ECF No. 32) |
| v. | |
| TAPIA, *et al.*, | |
| Defendants. | FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: EXHAUSTION<br>(ECF No. 26) |
| | **FOURTEEN (14) DAY DEADLINE** |

**FINDINGS AND RECOMMENDATIONS**

I.      **Background**

Plaintiff Emanuel Lewis Boone ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against Defendants Tapia and Felix for excessive force in violation of the Eighth Amendment, Defendants Arroyo and Jimenez for failure to protect in violation of the Eighth Amendment, and Defendants Tapia, Arroyo, and Jimenez for violation of the Due Process Clause.

On August 19, 2021, Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his prisoner administrative remedies as required by the Prison Litigation

1    Reform Act.[1]  Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en

2    banc), *cert. denied*, 574 U.S. 968 (2014).  (ECF No. 26.)  Plaintiff filed an opposition on

3    September 17, 2021, (ECF No. 29), Defendants filed a reply on September 24, 2021, (ECF No.

4    30), and Plaintiff filed a sur-reply on October 19, 2021, (ECF No. 31).  Defendants then filed a

5    motion to strike Plaintiff's unauthorized sur-reply, (ECF No. 32), and Plaintiff filed a response to

6    the motion on November 15, 2021, (ECF No. 33).

7         The motion for summary judgment and motion to strike Plaintiff's sur-reply are deemed

8    submitted.[2]  Local Rule 230(l).

9    **II.    Legal Standards**

10        **A.    Statutory Exhaustion Requirement**

11        Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action

12   shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

13   law, by a prisoner confined in any jail, prison, or other correctional facility until such

14   administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is

15   required regardless of the relief sought by the prisoner and regardless of the relief offered by the

16   process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to

17   all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

18        The failure to exhaust is an affirmative defense, and the defendants bear the burden of

19   raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*,

20   747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint,

21   a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise,

22   the defendants must produce evidence proving the failure to exhaust, and they are entitled to

23   summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most

24   favorable to the plaintiff, shows he failed to exhaust.  *Id.*

25   _____

26   [1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for
     summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th

27   Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 26-1.)

28   [2] These motions were dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the
     prolonged delay in resolution.

1   Defendants must first prove that there was an available administrative remedy and that

2   Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th

3   Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to

4   Plaintiff to show something in his particular case made the existing and generally available

5   administrative remedies effectively unavailable to her.  *Williams*, 775 F.3d at 1191 (citing *Albino*,

6   747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of

7   exhaustion remains with Defendants.  *Id.* (quotation marks omitted).

8       **B.**    **Summary Judgment Standard**

9   Any party may move for summary judgment, and the Court shall grant summary judgment

10   if the movant shows that there is no genuine dispute as to any material fact and the movant is

11   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*,

12   747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

13   party's position, whether it be that a fact is disputed or undisputed, must be supported by

14   (1) citing to particular parts of materials in the record, including but not limited to depositions,

15   documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

16   presence or absence of a genuine dispute or that the opposing party cannot produce admissible

17   evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

18   consider other materials in the record not cited to by the parties, although it is not required to do

19   so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.

20   2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

21   The defendant bears the burden of proof in moving for summary judgment for failure to

22   exhaust, *Albino*, 747 F.3d at 1166, and he must "prove that there was an available administrative

23   remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172.  If the defendant

24   carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence

25   showing that there is something in his particular case that made the existing and generally

26   available administrative remedies effectively unavailable to him."  *Id.*  "If undisputed evidence

27   viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is

28   entitled to summary judgment under Rule 56."  *Id.* at 1166.  However, "[i]f material facts are

1  disputed, summary judgment should be denied, and the district judge rather than a jury should

2  determine the facts." *Id.*

3  **III.    Discussion**

4        **A.    Summary of CDCR's Administrative Review Process**

5        At the relevant time, "[t]he California prison grievance system ha[d] three levels of

6  review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes*

7  *v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed

8  June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)).  *See also* Cal. Code Regs.

9  tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the

10 California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by

11 a designated representative under the supervision of the third level Appeals Chief or equivalent.

12 The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

13       Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or

14 omission by the department or its staff that the inmate . . . can demonstrate as having a material

15 adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

16       The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal.  *Id.* at

17 § 3084.2(a).  In the appeal form, prisoners must list all staff members involved and describe their

18 involvement in the issue.  *Id.* at § 3084.2(a)(3).  If the inmate does not have the requested

19 identifying information about the staff member, he must provide any other available information

20 that would assist the appeals coordinator in making a reasonable attempt to identify the staff

21 member in question.  *Id.*

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1      **B.      Undisputed Material Facts (UMF)[3]**

2  1.  Plaintiff Emanuel Boone (CDCR No. AZ9584) is an inmate in the custody of the

3      California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 10, First

4      Amended Compl., ("FAC"), p. 1; ECF No. 26-4 ("Johnson Decl.") ¶ 3; ECF No. 26-5

5      ("Keyfauver Decl.") ¶ 3; ECF No. 26-6 ("Moseley Decl.") ¶ 6.)

6  2.  Plaintiff filed this action on September 9, 2020, regarding alleged incidents at North Kern

7      State Prison ("NKSP").  (ECF No. 1, ("Compl.").)

8  3.  Plaintiff's FAC alleges, among other things, the following:

9
10          On June 6, 2016, at NKSP at Delano, California, Plaintiff was assaulted by
            Defendant D. Tapia, a correctional officer.  Tapia punched and kicked
11          Plaintiff multiple times while Plaintiff was on the ground, handcuffed, and
            pepper sprayed while being held down by other officers.  Defendants D.
12          Arroyo and M. Jimenez, correctional officers, held Plaintiff down and
            failed to intervene while Tapia assaulted Plaintiff.

13
            Plaintiff was later punched multiple times in the head and body by
14          Defendant J. Felix, an I.S.U. correctional officer, while awaiting medical
            attention and while held in a stand up cage.
15

16          Following the assaults, Defendants Tapia, Arroyo, and Jimenez lied and
            falsified documents, and caused Plaintiff to face criminal charges in Kern
17          County Superior Court, case number Df012821A.  Charges were filed on
            April 18, 2017, and later dismissed on June 18, 2020.

18
            Defendants conspired to violate the constitutional rights of incarcerated
19          persons by subjecting them to excessive force, falsification of documents,
            referrals for criminal prosecution, solitary detention, and false allegations.
20

21      (*See* FAC, generally.)

22  4.  In screening the FAC, the Court found Plaintiff stated a cognizable: (1) Eighth

23      Amendment excessive force claim against Defendants Tapia and Felix; (2) Eighth

24

25  _____
    [3] (ECF No. 26-3.)  Plaintiff did not provide a separate statement of undisputed facts in his opposition.  Local Rule
26  260(a).  As a result, Defendants' Separate Statement of Undisputed Facts in support of the motion for summary
    judgment is accepted except where brought into dispute by Plaintiff's Opposition to the motion for summary
27  judgment, signed under penalty of perjury.  *See Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998)
    (verified motion may be used as opposing affidavit if based on filer's personal knowledge of specific facts which are
28  admissible in evidence).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement
    and relevant objections are overruled.

5

Amendment failure to protect claim against Defendants Arroyo and Jimenez for failing to protect Plaintiff while Defendant Tapia was engaging in alleged excessive force; and (3) Fourteenth Amendment due process claim against Defendants Tapia, Arroyo, and Jimenez for fabricating evidence resulting in Plaintiff's disciplinary segregation and criminal prosecution.  The Court dismissed all other claims and defendants.  (ECF Nos. 13, 15.)

5.  An inmate appeal is initiated by submitting a CDCR Form 602 (Form 602 or appeal). (Johnson Decl. ¶ 5; Keyfauver Decl. ¶ 5); Cal Code Regs. tit. 15, § 3084.2(a).[4]

6.  Inmates must follow the procedures set forth in California Code of Regulations, Title 15, sections 3084.1 through 3085, which includes describing the problem and action requested in the appeal form.  The appeals process has three levels of review.  (Johnson Decl. ¶ 5; Keyfauver Decl. ¶ 5; Moseley Decl. ¶ 4.)

7.  At the first level of review, CDCR form 602 appeals are submitted to the appeals coordinator at the institution.  The appeals coordinator may bypass the first level under certain circumstances.  If the inmate is not satisfied with the decision at the first level, he may appeal to the second level.  The second level must be completed before the inmate may appeal to the third level.  The third level of review constitutes the decision of the Secretary of CDCR and is conducted under the supervision of the third level Appeals Chief or equivalent.  A decision at the third level review exhausts administrative remedies. To properly exhaust an administrative grievance, an inmate must pursue his appeals through all levels of the administrative appeal process unless excused from one of the levels under Title 15.  (Johnson Decl. ¶ 6; Keyfauver ¶ 6; Mosely Decl. ¶¶ 2, 4, 6); Cal. Code Regs. Tit. 15, §§ 3084.1, 3084.7.

8.  Inmates are required to list the staff members and the date of that staff member's involvement in the issue under appeal.  If the inmate does not have the requested identifying information about the staff member(s), he shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.  The inmate shall state all facts known and

---

[4] All citations to Title 15 refer to the versions in effect in 2016.

available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal forms.  (Johnson Decl. ¶ 7; Keyfauver Decl. ¶ 7); Cal. Code Regs. Tit. 15, §§ 3084.2(a)(3), 3084.2(a)(4).

9.  When an inmate submits an appeal that does not comply with regulations governing the appeal process, an appeals coordinator will reject and return the appeal with the reason for the rejection and provide instructions to correct the defect, if correction is possible.  An appeal that is cancelled cannot be resubmitted, but an inmate may appeal the cancellation if he/she feels the cancellation is in error.  An appeal may be rejected or cancelled for the reasons outlined in California Code of Regulations, Title 15, sections 3084.6(b) and (c), including expiration of time limits, allegations that lack factual evidence and specific detail, and exceeding the allowable number of appeals filed in a 14 calendar day period. If an appeal is rejected or cancelled at any level, it is not exhausted.  (Johnson Decl. ¶ 8; Moseley Decl. ¶ 4); Cal. Code Regs. tit. 15, §§ 3084.6(b), (c), and (e).

10. An appeal must be received by the appeals coordinator within 30 calendar days of: (1) the occurrence of the event or decision being appealed, or (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory department response to an appeal filed.  (Johnson Decl. ¶ 5; Keyfauver Decl. ¶ 5); Cal. Code Regs. tit. 15, § 3084.8(b).

11. When an inmate submits an appeal relating to events at a different institution, the receiving institution will forward the appeal to the appropriate institution for review. (Johnson Decl. ¶ 18; Keyfauver Decl. ¶ 13.)

12. The Office of Appeals ("OOA") receives, reviews, and maintains all non-medical inmate grievances at the third and final level of review.  (Moseley Decl. ¶ 2.)

13. A final decision at the third level of review generally exhausts an inmate grievance. Rejection or cancellation of an appeal at any level does not exhaust administrative remedies.  A request for the institution to modify or amend an appeal from the third level of formal review does not exhaust the appeal.  (Johnson Decl. ¶¶ 6, 9; Moseley Decl. ¶ 2); Cal. Code Regs. tit. 15, § 3084.1.

14. Plaintiff was housed at NKSP from May 26, 2016 through June 10, 2016.  CDCR and NKSP had an administrative review process for inmates at all times relevant to this lawsuit, which allows them to appeal any departmental decision, action, policy, omission, or condition that has an adverse material effect on the inmate's welfare.  (Johnson Decl. ¶ 3; Moseley Decl. ¶¶ 2–4.)

15. Plaintiff submitted no grievances between May 23, 2016 and June 10, 2016 while housed at NKSP.  (Johnson Decl. ¶ 17, Ex. A.)

16. Plaintiff was housed at Wasco State Prison ("WSP") from June 10, 2016 through November 10, 2016.  CDCR and WSP had an administrative grievance process for inmates at all times relevant to this lawsuit, which allows them to appeal any departmental decision, action, policy, omission, or condition that has an adverse material effect on the inmate's welfare.  (Keyfauver Decl. ¶ 3; Moseley Decl. ¶¶ 2–4.)

17. Plaintiff submitted no grievances between June 10, 2016 and November 10, 2016 while housed at WSP.  (Keyfauver Decl. ¶ 12, Ex. A.)

18. Plaintiff was housed at the Substance Abuse Treatment Facility ("SATF") when he submitted Appeal Log Number NKSP-X-18-02786 ("Appeal").  NKSP received the Appeal on July 10, 2018.  Plaintiff dated the Appeal June 24, 2018.  (Johnson Decl. ¶¶ 17, 19, Ex. B; Moseley Decl. ¶ 8, Ex. 2.)

19. The Appeal alleges that on June 7, 2016, Defendant D. Tapia brutally beat Plaintiff for no reason and falsified documents.  The Appeal states no allegations against Defendants J. Felix, D. Arroyo, or M. Jimenez.  (Johnson Decl. ¶ 20; Moseley Decl. ¶ 8, Ex. 2.)

20. Because California Code of Regulations Title 15, sections 3084.8(a) and (b) require an appeal be submitted within 30 calendar days, the Appeal was deemed untimely and rejected.  On July 10, 2018, Correctional Counselor Johnson sent a CDCR Form 695 Screening Form to Plaintiff advising him of the rejection of the appeal, but providing Plaintiff the opportunity to explain the reasons for the late submission, including when he was first interviewed by internal affairs regarding the allegations.  (Johnson Decl. ¶¶ 21–22, Ex. B.)

21. On September 11, 2018, the NKSP Inmate Appeal Office received Plaintiff's response on the Form 695.  In the response, Plaintiff stated he was interviewed by internal affairs at WSP approximately two months after the June 7, 2016 incident.  Plaintiff also stated that he received additional information during the course of discovery in his then-pending criminal prosecution.  Plaintiff acknowledged that this discovery occurred approximately 763 days following the June 7, 2016 incident.  (*Id.* ¶ 23, Ex. B.)

22. Correctional Counselor Johnson reviewed Plaintiff's Form 695 response and the reasons provided for the late submission.  The Appeal was deemed untimely, and was cancelled.  (*Id.* ¶ 24, Ex. B); Cal. Code Regs. tit. 15, § 3084.6(c)(4).

23. The NKSP Inmate Appeal Office did not find any other appeals submitted by Plaintiff during the relevant timeframe.  (Johnson Decl. ¶ 25.)

24. The OOA keeps an electronic record of each offender's appeal.  When an appeal is received, it is assigned a log number and entered into a computer system.  An appeal is reviewed and screened by the OOA.  An appeal is screened out if it does not comply with the regulations governing the appeal process.  An appeal is screened in, and answered substantively, if it complies with the governing regulations.  The Appeal History Report details whether the appeal was screened out or screened in.  If screened out, the Appeal History Report includes the reason.  (Moseley Decl. ¶¶ 3–4, Ex. 1.)

25. Plaintiff submitted the Appeal to the OOA, which was received October 18, 2018, and assigned Appeal Log Number 1814674.  The Appeal was screened out on January 24, 2019 due to it being previously cancelled.  (*Id.* ¶¶ 7–8, Exs. 1–2.)

26. Plaintiff submitted other appeals to the OOA which were accepted for review during the relevant time period but none were relevant to the FAC.  Plaintiff also submitted appeals during the relevant time period that were screened out.  (*Id.* ¶¶ 9–11, Exs. 3–9.)

**C.**     **Defendants' Motion to Strike Plaintiff's Sur-reply**

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired.  Local Rule 230(l).  The Court generally views motions for leave to file sur-replies with disfavor.  *Hill v. England*, No. CVF05869 REC TAG,

9

2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing *Fedrick v. Mercedes–Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).  However, district courts have the discretion to either permit or preclude a sur-reply.  *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).  In this Circuit, courts are required to afford *pro se* litigants additional leniency.  *E.g., Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Here, Plaintiff did not seek leave of Court before filing his sur-reply.  Defendants contend that they did not introduce new evidence or advance new arguments in their reply, Plaintiff's "new found evidence" proffered in the sur-reply was known to Plaintiff when he filed his opposition, and the sur-reply should therefore be stricken from the record.  In his opposition to Defendants' motion to strike the sur-reply, Plaintiff argues that when he received Defendants' motion for summary judgment, the prison was undergoing a mass search/lockdown and after his cell was searched, all of his legal work was in disarray.  In fear that he would not meet the opposition deadline, and belief that he could file a sur-reply, Plaintiff filed his opposition brief and the sur-reply merely produces documents to support arguments already raised in the opposition.

In light of Plaintiff's *pro se* status and the apparent unavailability of the proffered documents at the time Plaintiff's opposition was filed, the Court will exercise its discretion to not strike the evidence.  The Court will consider the evidence presented.

///

///

///

10

**D.      Discussion**

1.      Parties' Positions

Defendants argue that the undisputed facts show that Plaintiff's claims were not properly exhausted before filing suit (or before filing the operative complaint), as required by the PLRA. While Plaintiff submitted Appeal NKSP-X-18-02686 regarding the claims in this action against Defendant Tapia, he did so more than two years after the incident in question.  Plaintiff failed to justify the late submission, the Appeal was properly cancelled as untimely, and rather than appealing the cancellation, Plaintiff improperly submitted the appeal to the OOA.  Plaintiff therefore failed to properly exhaust all his claims against Defendant Tapia.  Plaintiff did not file any appeal referencing his claims against Defendants Felix, Arroyo, and Jimenez, and therefore failed to properly exhaust any claims against these defendants.  Plaintiff has not met the requirements to be excused from the exhaustion requirement because the undisputed facts show that the administrative appeal process was available and the Appeal was properly cancelled pursuant to the regulations.  To the extent that the Court finds any genuine disputes of material fact regarding exhaustion, Defendants request that the Court set a "preliminary proceeding" pursuant to *Albino* to resolve any such disputes before the parties proceed to the merits of this case.

In opposition, Plaintiff contends that he filed a timely grievance in accordance with regulations by personally handing his grievance directly to a correctional officer while he was housed in solitary confinement/ASU while the incident at issue in this action was being investigated.  Plaintiff alleges that the Defendants deliberately threw away his appeal or intentionally did not respond to it.  If Plaintiff filed all of the other grievances listed in Defendants' motion for summary judgment, why wouldn't he have done the same in this instance. Shortly after filing this initial grievance, Plaintiff was interviewed by Internal Affairs.  Plaintiff asked Internal Affairs members when he would get a response for his grievance, or if they received it, and the response was: "That is why we are here & you should get a response soon." Plaintiff also asked other officers, who stated he would eventually get a response or it may take some time.  Citing CCR Title 15, section 3084.9(a)(5), Plaintiff further argues that his claims fall

11

in the staff complaint category, and time limits shall not be imposed upon when an appellant may file a grievance regarding a staff complaint.  Plaintiff has also waited over 2 years for a response to other complaints before, which is why he waited 2 years after the incident to file another grievance.  Plaintiff attaches another grievance regarding prison staff taking his legal notes in regards to other grievances to show how prison personnel confiscated Plaintiff's property and legal notes intentionally to hinder Plaintiff's redress rights.  Because Internal Affairs is part of the appeal process, it should be held that Plaintiff exhausted his administrative remedies, or attempted to, but Defendants failed to respond to a properly filed grievance at no fault of Plaintiff. Defendants knew of and investigated this incident and had ample opportunity to address them, and Plaintiff gave Defendants two chances via administrative remedies by following upon with the lost grievance after the initial grievance "went missing."  CDCR failed or deliberately refused to respond to Plaintiff's complaints, and Defendants' motion for summary judgment should be denied.

In reply, Defendants contend that Plaintiff fails to set forth any competent evidence to support his "belief" that the timely grievance he purportedly filed was lost or intentionally discarded.  Further, Plaintiff's explanations provided to the NKSP Appeals Office for the late submission contradict with the opposition.  In the CDCR Form 695 Plaintiff states that he discovered witness statements in his criminal case approximately 683 days following the incident at issue, but did not state that he previously submitted a grievance, or that such a grievance was lost, discarded, or mishandled.  Had Plaintiff submitted a timely grievance, he would have informed NKSP that he had done so, or appealed the cancellation of his 2018 grievance as untimely.  The undisputed facts indicate that Plaintiff failed to timely and properly exhaust his claims, and that he was not excused from complying with the requirement to do so.

Plaintiff states in his sur-reply that not only did he file a conventional grievance in a timely manner, he also filed a habeas petition in regards to his grievances not being responded to. Immediately after the incident, Plaintiff not only filed a grievance in regards to the assault by Defendants, but he also filed a grievance in regards to his medical treatment after and injuries sustained from the incident.  Although medical grievances are separate from institutional

grievances, this further proves Plaintiff's claims regarding his prompt and efficient filing of grievances. Plaintiff also filed a grievance with the U.S. Department of Justice in regards to the incident. If further discovery is granted and the Internal Affairs tape revealed, it would also show that Plaintiff inquired about his grievance. Plaintiff did not state in the Form 695 that he filed an initial grievance, because he stated it within the appeal itself, so there was no need. To support his arguments, Plaintiff attaches copies of: (1) a September 16, 2016 order from the Kern County Superior Court regarding a petition for writ of habeas corpus HC# 15224A; (2) a September 15, 2016 second level response to Health Care Appeal WSP HC 16049867; and (3) an October 5, 2016 letter from the U.S. Department of Justice Civil Rights Division. (ECF No. 31, pp. 6–15.)

### 2.  Defendants Felix, Arroyo, and Jimenez

Defendants assert, and Plaintiff does not dispute, that Plaintiff did not file any relevant appeals regarding his claims against Defendants Felix, Arroyo, and Jimenez. UMF 19. Accordingly, Plaintiff failed to exhaust his administrative remedies as to his claims against these defendants, and these claims should be dismissed.

### 3.  NKSP-X-18-02686

It is undisputed that NKSP-X-18-02686, signed and dated June 24, 2018 and received July 10, 2018 by NKSP, was not filed within thirty days of the June 2016 incident between Plaintiff and Defendant Tapia. UMF 18. NKSP-X-18-02686 was rejected as untimely, but Plaintiff was provided a CDCR Form 695 to document the date he was interviewed by Internal Affairs and to explain the reason for the late submission. UMF 20. Plaintiff's response was reviewed and NKSP-X-18-02686 was deemed untimely and cancelled. UMF 22. Rather than appealing the cancellation, Plaintiff submitted NKSP-X-18-02686 to the OOA, where it was screened out due to the previous cancellation. UMF 25.

Plaintiff provides no explanation for his failure to appeal the cancellation of NKSP-X-18-02686, or for improperly submitting NKSP-X-18-02686 to the OOA after the cancellation. Further, to the extent Plaintiff argues in his opposition that his grievance was not subject to any time constraints as a staff complaint pursuant to Cal. Code. Regs. tit. 15, § 3084.9(a)(5), that exception applied only to allegations of "staff sexual misconduct or staff sexual harassment,"

1    which are not applicable to the allegations in this case.  Accordingly, NKSP-X-18-02686 did not

2    exhaust any of Plaintiff's claims in this action.

3                         4.      Availability of Grievance Process

4            Plaintiff's main argument is that the grievance process was made unavailable to him

5    because the timely grievance he submitted immediately after the June 2016 incident was lost or

6    deliberately misplaced.  In support of this argument, Plaintiff provides a copy of NKSP-X-18-

7    02686, in which Plaintiff states:

8            Initially I filed a 602 form at Wasco State Prison.  But after Internal Affairs came
             to see me they assured me that they would handle the situation, which I assumed
9            meant in regards to my 602.  But as time began to pass I slowly but surely began
             to realize that they intended to do nothing about it.
10

11   (ECF No. 29, pp. 19–20.)

12           While Plaintiff submits other documents to demonstrate that he previously filed a timely

13   grievance, the Court does not find that these provide evidence to support his assertions.  The

14   September 16, 2016 order from the Kern County Superior Court summarizes Plaintiff's petition

15   for writ of habeas corpus as follows:

16           Petitioner had an appointment or ducat with the law library but was being
             removed for a dental appointment on June 7, 2016.  He asserts the officer
17           slammed his head into the wall, and prison medical staff is refusing to treat him.

18           The appeal exhibits show that his appeals are being assigned to health care staff,
             but as of now, there has been no response.  Petitioner wants medical treatment.
19           Petitioner wants prison staff to be reprimanded.

20

21   (ECF No. 31, p. 6.)  The Kern County Superior Court then directs an informal response to the

22   following questions: "Is Petitioner receiving medical treatment stemming from the incident on

23   June 7, 2016? What is the status of Petitioner's administrative appeals (if any)?"  (*Id.*)  Plaintiff

24   has not attached any of the exhibits filed with his petition, nor has he included the informal

25   responses from the California State Attorney General, the Warden of WSP, or the California

26   Health Care Receiver as ordered by the Kern County Superior Court.  Thus, while the document

27   provides support for Plaintiff's assertion that he filed appeals that were assigned to health care

28   staff, it does not provide further evidence that Plaintiff timely filed a non-medical grievance

                                              14

1  regarding his claims in this action.  The same issue applies to health care grievance WSP HC

2  16049867.  (*Id.* at 8–13.)  Finally, the letter from the U.S. Department of Justice Civil Rights

3  Division provides a description of the types of work performed by the Special Litigation Section,

4  but otherwise does not describe the contents of Plaintiff's original correspondence, thus providing

5  no evidence that Plaintiff timely submitted a grievance regarding his claims in this action.  (*Id.* at

6  14–15.)

7        Based on the record before the Court, Plaintiff has failed to provide any evidence, other

8  than his own assertions in his opposition, sur-reply, and NKSP-X-18-02686, that he timely filed a

9  grievance regarding his claims in this action.  *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th

10  Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary

11  judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as

12  amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any

13  supporting evidence, is insufficient to create a genuine issue of material fact.").

14        Furthermore, even assuming that Plaintiff did file a timely grievance while at Wasco State

15  Prison, and that such a grievance was lost or otherwise mishandled, Plaintiff has nevertheless

16  failed to demonstrate that his administrative remedies were unavailable.  As discussed above,

17  NKSP-X-18-02686 was cancelled as untimely, and Plaintiff did not appeal the cancellation.

18  Plaintiff had the opportunity to explain that his prior timely grievance was not processed, both in

19  the CDCR Form 695 and in an appeal of the cancellation of NKSP-X-18-02686.  Plaintiff did not

20  do so, and instead submitted NKSP-X-18-02686 directly to the OOA, bypassing the available

21  administrative grievance process.  The Court therefore finds that Plaintiff's failure to exhaust his

22  available administrative remedies is not excused, and his remaining claims against Defendant

23  Tapia should be dismissed.

24  **IV.    Recommendation**

25        Based on the foregoing, Defendants' motion to strike Plaintiff's unauthorized sur-reply,

26  (ECF No. 32), is HEREBY DENIED.

27        Furthermore, IT IS HEREBY RECOMMENDED that Defendants' motion for summary

28  judgment for failure to exhaust, (ECF No. 26), be GRANTED.

1    These Findings and Recommendations will be submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

3  **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

4  file written objections with the Court.  The document should be captioned "Objections to

5  Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file

6  objections within the specified time may result in the waiver of the "right to challenge the

7  magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

8  (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

9

10  IT IS SO ORDERED.

11    Dated:   **May 14, 2024**                    /s/ *Barbara A. McAuliffe*

12                                                    UNITED STATES MAGISTRATE JUDGE

16